[Cite as *Cleveland v. Capital Source Bank*, 2019-Ohio-1990.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

CITY OF CLEVELAND,                    :

    Plaintiff-Appellee,            :

                                  No. 107422

    v.                             :

CAPITAL SOURCE BANK, FBO AEON   :
FINANCIAL L.L.C., ET AL.

                            :

    Defendant-Appellant.           :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** May 23, 2019

---

Civil Appeal from the Cleveland Municipal Housing Court
Case No. 2016-CVH 008988

---

### *Appearances:*

Douglass and Associates Co., L.P.A., David M. Douglass,
Sean F. Berney, Sandra A. Prebil, Michael E. Reardon, and
Daniel J. Wodarczyk, *for appellee.*

Weston Hurd, L.L.P., Steven L. Wasserman, and
Shawn W. Maestle, *for appellant.*

MARY EILEEN KILBANE, A.J.:

{¶ 1} Defendant-appellant, Pacific Western Bank, successor by merger to CapitalSource Bank ("PacWest"), appeals from the municipal court's decision granting summary judgment in favor of plaintiff-appellee, the city of Cleveland ("City"). For the reasons set forth below, we affirm.

{¶ 2} In June 2016, the City, on behalf of the Department of Building and Housing, filed a complaint in Cleveland Municipal Court, Housing Division, against several defendants seeking to collect, under R.C. 715.261 and Cleveland Codified Ordinance 3103.09(k) ("C.C.O. 3103.09"), costs it incurred for nuisance abatement services performed at 28 properties located in the City. Relevant to this appeal, the City sought to collect costs for the boarding up or demolition of four properties (Properties 1, 3, 5, and 8) that the City alleges were owned by CapitalSource Bank FBO Aeon Financial LLC. CapitalSource Bank ("CapitalSource") is now known as PacWest. In response, PacWest filed an answer, denying ownership of the four properties.

{¶ 3} At the conclusion of discovery, both PacWest and the City filed respective motions for summary judgment. PacWest argued that it never held title or real property interest in any of the properties designated in the City's complaint because the use of the formulation "CapitalSource Bank FBO Aeon Financial, LLC" made it a secured creditor, not the actual owner of properties. PacWest argued that Aeon Financial, LLC ("Aeon") was the actual titled owner of the four properties. The City, on the other hand, argued that CapitalSource and later PacWest, as successor

by merger, was the titled owner of record and liable for the nuisance abatement services.

{¶ 4} The municipal court granted summary judgment in favor the City, finding that "the deeds made CapitalSource Bank the titled owner of the four properties, not a secured creditor." In a thorough opinion, the court stated:

> Pacific Western does not dispute that the City is entitled to recover its abatement costs relative to the subject properties from the titled owners of the properties. In the case of the costs to secure the properties from casual entry by boarding up the windows and doors, the City is entitled to recover those costs from the party who was the titled owner at the time the costs were incurred. R.C. 715.261. In the case of the cost to demolish condemned structures, the City is entitled to recover the costs from all owners in the chain of title from the date of the service of the notice of violations under C.C.O. 3103.09 until the demolition of the structure. C.C.O. 3103.09(k). What Pacific Western argues is that, as a matter of law, given the use of the formulation "CapitalSource Bank FBO Aeon Financial, LLC" to name the owner of the properties in the recorded deeds, it was never a titled owner of those properties, the formulation making it a secured creditor only and making Aeon Financial, LLC the titled owner.

> * * *

> A "naming convention" would be a usage of language about which there is general agreement, a usage that is widespread and customary. If it was customary in the legal context, there would be legal authority to support it.

> If the naming convention is considered as a question of fact, Pacific Western has failed to identify any evidence tending to show that there is any such general agreement about the meaning of the formulation when used in Sheriff's deeds in Ohio. Pacific Western has only identified evidence that a representative of CapitalSource understood and wished the company to be a secured creditor only and not a titled owner of properties taken through foreclosure based on tax certificates purchased by Aeon and held by CapitalSource. The understanding or intent of a bank executive does not change the legal meaning of a Sheriff's deed.

Pacific Western cites to R.C. 5721.33 for the proposition that the formulation "CapitalSource FBA Aeon Financial, LLC" is the convention used to name a tax certificate holder when the holder is the secured creditor of the tax certificate purchaser. It then argues that the meaning of that formulation on the Sheriff's deeds must have the same meaning that it has in the context of tax certificates.

This argument fails for two reasons. First, a naming convention by definition applies only where there is a general agreement about the meaning of the convention. The convention of using "FBO" in the name of a tax certificate holder has meaning only to the extent that county treasury officials, lenders and tax certificate purchasers agree on what it means. In another context — that of recorded deeds under Ohio law — the formulation does not have an agreed-upon meaning and so does not function in the same way.

Second, Pacific Western misstates the meaning of the convention in the context of tax certificates. The naming convention means that a secured creditor — in this case CapitalSource Bank — has become the holder of a tax certificate because the purchaser of the tax certificate directed the county to make the secured creditor the holder of the certificate.

* * *

Under R.C. 5721.37, it is the certificate holder who can bring a foreclosure action which shall be prosecuted until a sale of the property or the "vesting of title and possession in the certificate holder." R.C. 5721.37. Where the certificate holder is the secured creditor of the purchaser, the secured creditor is thus the plaintiff in the foreclosure and, in the absence of a sale at auction, is vested with title to the property. The designation "CapitalSource FBO Aeon Financial, LLC" thus meant that Aeon's secured creditor, CapitalSource, became the certificate holder, the foreclosure plaintiff, and then the titled owner of the real property.

There seems to be no dispute that CapitalSource and Aeon agreed that Aeon would eventually take title to the properties. But that result was accomplished by quitclaim deeds from CapitalSource to Aeon, not by a naming convention used by the Sheriff when preparing the deeds. CapitalSource was therefore titled owner of the properties until it deeded them to Aeon.

A Maryland court reached the same conclusion concerning the meaning of the formulation "CapitalSource Bank FBO Aeon Financial, LLC." In that case, CapitalSource, as the secured creditor of Aeon, had become the holder of a tax certificate purchased by Aeon, and then the plaintiff in a foreclosure with its name styled "CapitalSource Bank FBO Aeon Financial, LLC." CapitalSource argued that it was not a party to the foreclosure, Aeon Financial being the real party in interest. The court disagreed. "There is nothing in the designation 'FBO' that makes Aeon the real party in interest and CapitalSource or CapitalSource FBO a non-party." [*CapitalSource Bank FBO Aeon Fin., LLC v. Sollers*, Ct.Spec.App. No. 1210, 2016 Md.App LEXIS 626, *21-22 (June 18, 2016)].

* * *

The fact that CapitalSource executed deeds from itself to Aeon reinforces the conclusion that CapitalSource had title to the properties. If CapitalSource sought only to release secured interests, it could have recorded releases of those secured interests. Instead it executed quitclaim deeds that make no mention of any secured interest.

Though the deeds do not include any warranty of title, they refer to real property to be conveyed. They also refer to consideration which is not necessary to the release of a secured interest. The deeds from the Sheriff to CapitalSource and from CapitalSource to Aeon are thus part of the chain of title for each property.

Pacific Western does not dispute that the condemnation notices for the four properties were issued after the Sheriff's deeds were recorded but before the quitclaim deeds to Aeon and that the costs to secure the properties from casual entry were incurred during that same time period. Thus, under C.C.O. 3103.09(k), CapitalSource is liable for the cost to secure the properties and jointly and severally liable for the City's cost to demolish the condemned structures.

Pacific Western does not dispute the amount of the City's costs which include collection costs and attorney fees. The Court therefore grants judgment to the City in the amount of $20,089 with interest from the date of judgment.

{¶ 5} It is from this order that PacWest appeals, raising the following sole assignment of error for review:

<u>Assignment of Error</u>

**The trial court erred in failing to determine that a material issue of fact existed as to whether CapitalSource Bank of Aeon Financial, LLC was the properties['] actual owner.**

**{¶ 6}** **PacWest argues the court erred when it granted summary judgment in favor of the City because the deeds did not transfer title to CapitalSource. Rather, PacWest contends that the deeds transferred title to Aeon Financial, LLC subject to a security interest in favor of CapitalSource, which was established by the use of the words "CapitalSource Bank FBO Aeon Financial, LLC."**

**{¶ 7}** **We review an appeal from summary judgment under a de novo standard of review.** *Grafton v. Ohio Edison Co.*, **77 Ohio St.3d 102, 105, 1996-Ohio-336, 671 N.E.2d 241;** *Zemcik v. LaPine Truck Sales & Equip. Co.*, **124 Ohio App.3d 581, 585, 706 N.E.2d 860 (8th Dist.1998). In** *Zivich v. Mentor Soccer Club*, **82 Ohio St.3d 367, 369-370, 1998-Ohio-389, 696 N.E.2d 201, the Ohio Supreme Court set forth the appropriate test as follows:**

**{¶ 8}** **Pursuant to Civ.R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor.** *Horton v. Harwick Chem. Corp.*, **73 Ohio St.3d 679, 1995-Ohio-286, 653 N.E.2d 1196, paragraph three of the syllabus. The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that it is**

entitled to judgment as a matter of law. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 1996-Ohio-107, 662 N.E.2d 264.

{¶ 9} Once the moving party satisfies its burden, the nonmoving party "may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E); *Mootispaw v. Eckstein*, 76 Ohio St.3d 383, 385, 1996-Ohio-389, 667 N.E.2d 1197. Doubts must be resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 358-359, 1992-Ohio-95, 604 N.E.2d 138.

### Relationship between PacWest and Aeon

{¶ 10} In September 2009, CapitalSource and Aeon entered into a "Loan and Security Agreement" ("Loan Agreement") as agent lender and borrower, respectively. The Loan Agreement stipulated that CapitalSource, along with other lenders, would provide a revolving credit facility to Aeon in the maximum principal amount of $30 million and, in exchange, Aeon would grant a security interest in collateral to CapitalSource and the other lenders.

{¶ 11} In April 2014, PacWest and CapitalSource entered into an "Agreement and Plan of Merger of CapitalSource Bank and Pacific Western Bank" ("Merger Agreement"), effectively merging CapitalSource into PacWest. In Article V of the Merger Agreement, PacWest assumed all liabilities of CapitalSource.

{¶ 12} During his deposition, J.T. Cook, III ("Cook"), Vice President of CapitalSource testified that "CapitalSource Bank, FBO AEON Financial, LLC" was a

naming convention CapitalSource Bank required and "FBO" means "for benefit of." The "FBO" naming convention was to perfect CapitalSource's security interest and to give notice to third parties of its security interest. Based on this naming convention, PacWest argues CapitalSource was merely Aeon's lender.

{¶ 13} However, the Loan Agreement between Aeon and CapitalSource provides that CapitalSource was not only a lender, but in fact a collateral agent for itself and for all other Lenders. Moreover, the grant of security interest and collateral section of the Loan Agreement provides:

> (a) To secure the payment and performance of the Obligations, Borrower [Aeon] hereby grants to Agent [CapitalSource Bank] for benefit of itself and the other Lenders, a valid, perfected and continuing first priority * * * security interest in and Lien upon*, and pledges to Agent*, for benefit of itself and the other Lenders, *all of its right, title and interest in and upon all of the following assets of Borrower, now owned or hereafter acquired*:
>
> * * *
>
> (iii) all right, title and interest of Borrower in and to the Underlying Real Property[.]
>
> (Emphasis added.)

{¶ 14} In addition, section 13.1(h) of the Loan Agreement provides that the "Agent shall have the sole and exclusive right and authority to * * * manage, supervise, and otherwise deal with the collateral." "Collateral" is defined in the Loan Agreement as the "Real Property owned from time to time by Borrower[.]"

## Properties 1, 3, 5, and 8

{¶ 15} A review of the record reveals that for Property 1 (4266 E. 160th Street, Cleveland, Ohio 44128), CapitalSource Bank, FBO AEON Financial, LLC negotiated a "Tax Certificate Sale Agreement" with the Cuyahoga County Treasurer's Office, identifying CapitalSource Bank, FBO Aeon Financial, LLC as the "purchaser." This allowed CapitalSource Bank, FBO Aeon Financial, LLC to purchase tax certificates for certain parcels in 2009 with the option to purchase subsequent tax liens for those parcels in the future. Under this agreement, CapitalSource Bank, FBO Aeon Financial, LLC purchased a tax certificate in October 2009, which was recorded with the Cuyahoga County Recorder as AFN 200910270958.

{¶ 16} In August 2010, CapitalSource Bank, FBO AEON Financial, LLC purchased another tax certificate on the property, which was recorded with the Cuyahoga County Recorder's Office as AFN 201009020356. CapitalSource Bank, FBO AEON Financial, LLC foreclosed on its tax certificates for Property 1 in the Cuyahoga County Court of Common Pleas, and obtained its judgment of foreclosure in June 2011. Property 1 was eventually forfeited to the certificate holder under R.C. 5721.40. The common pleas court confirmed the decree of forfeiture in November 2011. The Cuyahoga County Sheriff conveyed all rights, title, and interest to CapitalSource Bank, FBO AEON Financial, LLC by sheriff's deed executed on November 8, 2011 and recorded on December 16, 2011. Cook executed a quitclaim deed to Aeon Financial, LLC, which was recorded with the Cuyahoga County

Recorder's Office on May 3, 2012. The City boarded up and eventually demolished the property in October 2012 and incurred costs totaling $8,136.96.

{¶ 17} With regard to Property 3 (10707 Crestwood Ave., Cleveland, Ohio 44104), the record demonstrates that CapitalSource Bank, FBO Aeon Financial, LLC purchased a "Tax Certificate Sale Agreement" with the Cuyahoga County Treasurer's Office, identifying CapitalSource Bank, FBO Aeon Financial, LLC as the "purchaser." This tax certificate was recorded with the Cuyahoga County Recorder as AFN 200910200148. CapitalSource Bank, FBO Aeon Financial, LLC foreclosed on its tax certificate for Property 3 in the Cuyahoga County Court of Common Pleas, and obtained its judgment of foreclosure in September 2011. Property 3 was eventually forfeited to the certificate holder. The common pleas court confirmed the decree of forfeiture in November 2011. The Cuyahoga County Sheriff conveyed all rights, title, and interest to CapitalSource Bank, FBO Aeon Financial, LLC by sheriff's deed executed on November 21, 2011 and recorded on December 16, 2011. Cook executed a quitclaim deed to Aeon Financial, LLC, which was recorded with the Cuyahoga County Recorder's Office on May 3, 2012. The City boarded up the property in May 2012 and incurred costs totaling $183.68.

{¶ 18} With regard to Property 5 (573 E. 114th Street, Cleveland, Ohio 44108), the record reveals that TCF National Bank FBO Aeon Financial, LLC ("TCF") purchased a tax certificate. TCF transferred all of its rights, title, and interest in the tax certificate to CapitalSource Bank FBO Aeon Financial, LLC. CapitalSource Bank, FBO Aeon Financial, LLC foreclosed on its tax certificate for

Property 5 in the Cuyahoga County Court of Common Pleas, and obtained its judgment of foreclosure in July 2011. Property 5 was eventually forfeited to the certificate holder. The common pleas court confirmed the decree of forfeiture in November 2011. The Cuyahoga County Sheriff conveyed all rights, title and interest to CapitalSource Bank, FBO Aeon Financial, LLC by sheriff's deed executed on November 21, 2011 and recorded on December 16, 2011. Cook executed a quitclaim deed to Aeon Financial, LLC, which was recorded with the Cuyahoga County Recorder's Office on May 3, 2012. The City boarded up and eventually demolished the property in November 2013 and incurred costs totaling $11,613.44.

{¶ 19} With regard to Property 8 (6404 Fullerton Ave., Cleveland, Ohio 44105), the record demonstrates that TCF purchased a tax certificate. TCF transferred all of its rights, title, and interest in the tax certificate to CapitalSource Bank FBO Aeon Financial, LLC. CapitalSource Bank, FBO Aeon Financial, LLC foreclosed on its tax certificate for Property 8 in the Cuyahoga County Court of Common Pleas, and obtained its judgment of foreclosure in July 2011. Property 8 was eventually forfeited to the certificate holder. The common pleas court confirmed the decree of forfeiture in June 2012. The Cuyahoga County Sheriff conveyed all rights, title, and interest to CapitalSource Bank, FBO Aeon Financial, LLC by sheriff's deed executed on August 31, 2012 and recorded on September 11, 2012. Cook executed a quitclaim deed to Aeon Financial, LLC, which was recorded with the Cuyahoga County Recorder's Office on January 11, 2013. The City boarded up the property in October 2012 and incurred costs totaling $232.96.

## PacWest's Liability for Costs is Created by C.C.O. 3103.09

{¶ 20} We note that C.C.O. 3103.09 provides guidance as to who is responsible for the costs of the demolition and nuisance abatement services. Under C.C.O. 3103.09(e)(1), whenever the City's director of building and housing finds a structure as a public nuisance, the Director shall forward a written notice of the violation "by certified mail to the owner, agent or person in control of the building[.]" In the event the "owner, agent or person in control fails, neglects or refuses to comply with the notice * * *, the Director may take appropriate action to demolish and remove an unsafe structure or to remove or abate any condition[.]" C.C.O. 3103.09(h)(1).

{¶ 21} Under C.C.O. 3103.09(k)(1), "[a]ny and all expenses or costs * * * relating to the demolition, repair, alteration, securing or boarding of a building or structure or for abating any other nuisance shall be paid by the owner of such building or structure[.]" Additionally, C.C.O. 3103.09(k)(2) provides in relevant part:

> Any and all owners of a building or structure, *who appear in the chain of title from the time of receipt of a notice of condemnation until demolition of the building or structure*, shall be jointly and severally responsible for all costs and expenses incurred relating to the demolition and all costs and expenses of prosecution or collection related thereto.

(Emphasis added.)

{¶ 22} The term "owner" is defined in C.C.O. 3101.05(j) as:

> the owner or owners of the premises, a vendee in possession, *a mortgagee or receiver in possession*, a lessee or joint lessees of the

whole thereof, *or an agent or any other person, firm, or corporation directly in control of the premises or having a legal or equitable interest in the property.*

(Emphasis added.)

{¶ 23} Thus, the City may recoup its costs related to the abatement of the nuisance or the demolition of the condemned structure from any and all owners of the premises who appear in the chain of title.

{¶ 24} In the instant case, regardless of PacWest's or CapitalSource's intent, they are both considered "owners" under C.C.O. 3103.09(k)(2) because they have a legal or equitable interest in the properties. "A 'legal interest' in property is held by the person who holds title to the property." *Lone Star Equities, Inc. v. Dimitrouleas*, 2015-Ohio-2294, 34 N.E.3d 936, ¶ 41 (2d Dist. 2015), citing *Victoria Plaza, L.L.C. v. Cuyahoga Cty. Bd. of Revision*, 86 Ohio St 3d 181, 1999-Ohio-148, 712 N.E.2d 751. An "equitable interest" or "beneficial interest" in property includes "'the interest of one who is in possession of all characteristics of ownership other than legal title of the taxable property.'" *Victoria Plaza* at 183, quoting *Refreshment Serv. Co. v. Lindley*, 67 Ohio St.2d 400, 423 N.E.2d 1119 (1981); *Lone Star Equities* at ¶ 41. Here, there is no dispute CapitalSource appeared in the chain of title during the relevant time periods. As a result, the housing court properly granted summary judgment in favor of the City — there is no dispute that PacWest was the "owner" of the properties.

{¶ 25} Having found that PacWest is an owner under C.C.O. 3103.09(k)(2), we do not need to reach PacWest's argument that the "FBO" designation results in

it only having a security interest in the property and the court's reliance on

*CapitalSource Bank FBO Aeon Fin., LLC v. Sollers*, 2016 Md. App. LEXIS 626, *4

(Md. Ct. Spec. App. 2015).

{¶ 26} Accordingly, the sole assignment of error is overruled.

{¶ 27} Judgment is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY EILEEN KILBANE, ADMINISTRATIVE JUDGE

SEAN C. GALLAGHER, J., and
PATRICIA ANN BLACKMON, J., CONCUR