[Cite as *Cleveland v. Colby*, 2022-Ohio-4207.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

CITY OF CLEVELAND,                    :

    Plaintiff-Appellee,          :

                      No. 111400

    v.                          :

TERRELL J. COLBY, ET AL.,             :

    Defendants-Appellants.       :

[Appeal by Ohio Properties, L.L.C.]   :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** November 23, 2022

---

Civil Appeal from the Cleveland Municipal Court
Case No. 2019 CVH 006506

---

### *Appearances:*

Douglass & Associates Co., LPA, David M. Douglass, Sean F. Berney, Michael E. Reardon, and Heidi A. Armstrong, *for appellee.*

Lieberman, Dvorin & Dowd, LLC, David M. Dvorin and Dustin S. Lewis, *for appellant.*

KATHLEEN ANN KEOUGH, J.:

{¶ 1} Defendant-appellant, Ohio Properties, L.L.C. ("appellant"), appeals from the trial court's judgment granting summary judgment to plaintiff-appellee, the city of Cleveland (the "city"), on the city's claim for reimbursement of monies expended in demolishing a condemned property once owned by appellant. For the reasons that follow, we affirm.

## I.    Background

{¶ 2} Appellant took title to the property at 714 East 124th Street in Cleveland, a two-story, six-unit apartment building (the "Property"), on June 9, 2010. On August 22, 2012, the city, through its Director of Building and Housing, determined that the Property was a public nuisance because its dilapidated and abandoned condition constituted an eminent danger and peril to human life and public health. The city issued a Notice of Violation of Building and Housing Ordinances (the "Notice") to appellant, advising it that pursuant to Cleveland Codified Ordinances ("C.C.O.") 3103.09, 367.04, 369.19, and 369.21, the city would summarily abate the nuisance by demolishing the Property if the code violations listed in the Notice were not abated by September 21, 2012. The Notice advised that "[a]ny and all costs incurred by the city for the demolition of the building(s) shall be paid by the owner(s) of record" and that if appellant did not pay, the city would initiate legal action "to collect the debt." The Notice further advised appellant that if it wished to appeal the Notice, it must file a written appeal within 30 days of the date of the Notice.

**{¶ 3}** Appellant did not appeal the Notice. Instead, on May 13, 2013, it sold the Property for $1.00 to Hauser Estates L.L.C. and Carries Investments, L.L.C. Hauser and Carries sold the Property to Lojuanah Donn on July 31, 2015, also for $1.00. Donn sold the property on May 17, 2016, to Terrell Colby. The city subsequently sent Colby a copy of the Notice. On May 17, 2017, the city demolished the Property, using a private demolition contractor, because the cited code violations had not been corrected.

**{¶ 4}** On April 26, 2019, the city filed suit against the above-mentioned owners of the Property for collection of its demolition and other costs relating to the Property. The city sought $25,663.73 for demolition, nuisance abatement, and administrative costs, plus attorney fees in the amount of $6,415.93, for a total of $32,079.66. Only appellant answered the complaint.

**{¶ 5}** After discovery was complete, the city filed a motion for summary judgment. Exhibits attached to the city's motion included copies of records relating to title transfers between the owners of the Property, the Notice, certified mail receipts regarding the Notice, pictures of the Property, invoices for the city's asbestos abatement at the Property and demolition of the Property by independent contractors, a statement of the city's administrative costs relating to the Property, an affidavit of counsel regarding the amount and reasonableness of attorney fees for work performed on the matter, and an affidavit from the city's Assistant Director of Building and Housing attesting to the matters set forth in the city's complaint.

{¶ 6} In its motion, the city argued that under R.C. 715.261, a municipality may recover the costs of abating a nuisance from a property owner. It argued further that under C.C.O. 3103.09(k)(1), "[a]ny and all expenses and costs * * * incurred under this section relating to the demolition * * * of a building * * * or for abating any other nuisance shall be paid by the owner of such building or structure * * *" and under C.C.O. 3103.09(k)(2),

> [a]ny and all owners of a building or structure who appear in the chain of title from the time of receipt of a notice of condemnation until demolition of the building or structure shall be jointly and severally responsible for all costs and expenses incurred relating to the demolition and all costs and expenses of prosecution or collection related thereto.

{¶ 7} The city argued that appellant had admitted in its answers to the city's interrogatories that it owned the Property from June 9, 2010, through May 13, 2013. Accordingly, the city asserted that because appellant owned the Property when the Notice was issued, there was no genuine issue of material fact that appellant was jointly and severally liable for the costs of demolition and nuisance abatement relating to the Property.

{¶ 8} Appellant filed a brief in opposition to the city's motion. Appellant conceded that it had received the Notice but argued that the Notice did not adhere to the procedural due process requirements of R.C. Chapter 119, as applied to the city by R.C. 3781.031, regarding notices of violation. Appellant contended that the Notice failed to advise it of "all of the rules and laws involved" in the violation and further, that "it actually misrepresented the liability in question." Specifically,

appellant asserted that the statement in the Notice that costs incurred by the city for the demolition "shall be paid by the owner(s) of record" referred only to the owner of the property at the time of demolition and not to all owners within the chain of title and, therefore, the Notice failed to advise appellant that it could be liable for demolition costs even if it sold the Property. Appellant further contended that the city did not provide an opportunity for a hearing, as required by R.C. 119.06. Accordingly, appellant argued that the Notice violated its procedural due process rights and, therefore, it would be "statutorily and constitutionally impermissible" for the court to grant summary judgment to the city under such circumstances.

{¶ 9} Appellant also argued that even if it were found liable, it could only be held responsible for 20 percent of the demolition costs because the city had admitted that "[appellant] owned the Property for less than 20% of the relevant time and is no more responsible than any of the other co-defendants." Appellant pointed to the city's responses to requests No. 15 and 16 in appellant's requests for admissions as evidence of the city's admissions:

> **Request No. 15:** According to title records showing a transfer on 5/13/2013, the City's records indicating a condemnation notice was issued on 8/22/2012, and that demolition occurred on 5/12/2017, Defendant Ohio Properties, LLC owned the subject property for less than 20% of the time the property was condemned.
>
> **ANSWER:** Admitted.
>
> **Request No. 16:** Three other persons or entities owned the Property while it was condemned, and all three equally failed to abate any nuisance alleged by the City.
>
> **ANSWER:** Admitted.

{¶ 10} Appellant argued that pursuant to R.C. 2307.22(A)(2), regarding joint and several liability in tort actions, where a defendant is less than 50 percent liable for the injury or loss to person or property, the defendant is liable to the plaintiff only for his proportionate share of the damages. Accordingly, appellant argued that because the city had conceded that appellant owned the Property for only 20 percent of the time it was condemned, appellant could only be liable for 20% of the demolition costs, or around $5,000.

{¶ 11} After appellant filed its brief in opposition, a magistrate issued a journal entry advising the parties that he had construed appellant's brief to be a cross-motion for summary judgment "attacking the constitutionality of C.C.O. 3103.09(k)(2)." The city filed an objection to the magistrate's order, asserting that neither party had raised an issue regarding the constitutionality of C.C.O. 3103.09(k)(2) and that the court had therefore impermissibly raised the issue sua sponte.

{¶ 12} The city also filed a reply to appellant's brief in opposition to the city's motion for summary judgment. In its reply, the city asserted that the Notice was procedurally sufficient because it was issued in compliance with C.C.O. 3103.09(c), which requires a certified mailing, a list of the existing code violations, a prescribed period of time to comply, and actions to be taken if the recipient does not comply with the Notice. Furthermore, the city pointed out that the Notice gave appellant the right to appeal the Notice within 30 days of its issuance, in compliance with C.C.O. 3103.09(g).

{¶ 13} The city also pointed out that the Notice advised appellant that it was issued pursuant to C.C.O. 3103.09, 367.04, 369.19, and 369.21, and that failure to comply with the Notice would result in "prosecutive action or penalty as provided by law" and "demolition of the building(s)." The Notice further advised that "any and all costs incurred by the city for the demolition of the building(s) shall be paid by the owner(s) of record" and that "if the owner(s) fails to pay for the costs within 30 days, legal action shall be initiated to collect the debt." Accordingly, the city argued, appellant's assertion that the Notice did not adequately advise it of "all the rules and laws involved" in the violation was simply wrong.

{¶ 14} With respect to appellant's argument that the Notice referred only to the owner at the time of demolition, the city argued that for purposes of C.C.O. 3103.09(k)(2), a party is an "owner" of property when it appears in the chain of title between notice of violation and demolition. And finally, with respect to appellant's argument regarding its limitation on liability, the city asserted that C.C.O. 3103.09(k)(2) applies joint and several liability to each owner of the property from the notice of violation to the time of demolition.

{¶ 15} In its judgment entry granting summary judgment to the city, the trial court sustained the city's objections to the magistrate's order, ruling that the city was "correct that the court should not consider granting judgment to [appellant] when [appellant] has not sought that relief" and that appellant should have filed a request for leave to file a motion for summary judgment if it wanted such relief.

{¶ 16} Regarding the city's motion for summary judgment, the trial court found that the city had met its burden of demonstrating that it had provided a Notice of violation to appellant ordering it to abate the nuisance, that appellant did not abate the nuisance, and that the city then, at its costs, did so by demolition. The court ruled that under C.C.O. 3103.09(k), appellant was liable for the cost of the abatement because it owned the Property when it was condemned, even though it was not the owner at the time of demolition.

{¶ 17} The trial court found that appellant had not met its reciprocal burden of identifying evidence that disputed the elements of the city's claim. The court found that appellant had argued that C.C.O. 3103.09(k)(2) was unconstitutional but that its due process argument failed because it did not challenge the application of C.C.O. 3103.09(k)(2) through an administrative appeal. The trial court also ruled that the city was entitled to judgment against appellant for the full cost of the abatement of the public nuisance on the Property because C.C.O. 3103.09(k)(2) provides for joint and several liability between all property owners after the notice of condemnation until the time of demolition. Accordingly, the court granted judgment to the city against appellant in the amount of $32,079.66, plus costs. This appeal followed.[1]

---

[1] Appellant's initial appeal to this court was dismissed for lack of a final appealable order because the trial court's judgment entry did not address the city's claims against the remaining defendants. The city subsequently filed a renewed motion for default judgment against the remaining defendants, which the trial court granted. Appellant then refiled its appeal.

## II. Law and Analysis

### A. Summary Judgment

{¶ 18} In its first assignment of error, appellant contends that the trial court erred in granting summary judgment to the city regarding its liability for the demolition costs.

{¶ 19} Under Civ.R. 56(C), summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) after construing the evidence most favorably for the party against whom the motion is made, reasonable minds can only reach a conclusion that is adverse to the nonmoving party. *Zivich v. Mentor Soccer Club, Inc.*, 82 Ohio St.3d 367, 369-370, 696 N.E.2d 201 (1998); *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977). We review the trial court's judgment de novo, using the same standard that the trial court applies under Civ.R. 56(C). *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Accordingly, we stand in the shoes of the trial court and conduct an independent review of the record.

{¶ 20} On a motion for summary judgment, the moving party carries the initial burden of demonstrating specific facts in the record that demonstrate its entitlement to summary judgment. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996). If the moving party meets this burden, the nonmoving party has a reciprocal burden to point to evidence of specific facts in the record demonstrating the existence of a genuine issue of material fact for trial. *Id.* at 293.

Summary judgment is appropriate if the nonmoving party fails to meet this burden. *Id.*

{¶ 21} Appellant contends that the trial court erred in granting summary judgment to the city because the Notice did not meet the procedural due process standards set forth in R.C. 119.07, which requires that

> [n]otice shall be given by registered mail, return receipt requested, and shall include the charges or other reasons for the proposed action, the law or rule directly involved, and a statement informing the party that the party is entitled to a hearing if the party requests it within thirty days of the time of mailing of the notice.

{¶ 22} Appellant asserts that the Notice was deficient because "it not only failed to inform [it] of all rules and laws involved in the violation and penalties, but actually misrepresented the nature of the liability in question." Appellant's brief, p. 8. Appellant argues that the statement in the Notice that "[a]ny and all costs incurred by the city for the demolition of the building(s) shall be paid by the owner(s) of record" would lead "any reasonable person" to conclude that liability for demolition was limited to property owners at the time of demolition and did not include ongoing liability for all owners in the chain of title.

{¶ 23} Appellant contends that the trial court erred in granting summary judgment to the city because "R.C. Chapter 119 requires that a party be fully informed of the nature of a decision made by an underlying governmental body so that an affected party can be capable of exercising its procedural rights, including its right to appeal," and that "[a] penalty that results from a deficient notice under R.C.

119 is void." Appellant's brief, p. 7. It asserts that "the Notice did not comply with R.C. 119.07 and was thus invalid, making any judgment against it a nullity." *Id.*

{¶ 24} Before considering the merits of appellant's arguments, we must address the magistrate's order finding that appellant's brief in opposition challenged the constitutionality of C.C.O. 3103.09(k)(2) and the trial court's judgment that appellant's challenge to C.C.O. 3103.09(k)(2) necessarily failed because appellant had not raised its constitutional as-applied challenge to the ordinance before an administrative body. The magistrate and the trial court's conclusions were incorrect.

{¶ 25} It is unclear why the magistrate and trial court concluded that appellant was challenging the constitutionality of C.C.O. 3103.09(k)(2). The only argument appellant made in its brief in opposition regarding C.C.O. 3103.09(k)(2) was that the joint and several liability referenced in the ordinance was statutorily limited by R.C. 2307.22, such that appellant could be held responsible for only 20% of the demolition costs under Ohio's joint and several liability laws. Appellant made no argument whatsoever regarding the constitutionality of C.C.O. 3103.09(k)(2).

{¶ 26} Rather, appellant argued that the Notice was insufficient under the due process requirements of R.C. Chapter 119 because it did not give appellant effective notice of the rules and laws involved in the violation and notice that all chain of title owners from the date of the Notice through the date of demolition would be held liable for demolition costs. That was not an as-applied challenge to the constitutionality of C.C.O. 3103.09(k)(2), as the magistrate and trial court

erroneously determined; it was an argument that the Notice was procedurally defective under R.C. 119.07 and that in issuing an allegedly defective Notice, the city had violated appellant's procedural due process rights. Accordingly, the trial court erred in holding that appellant's due process argument failed because appellant had not first raised the as-applied challenge to the constitutionality of C.C.O. 3103.09(k)(2) in an appeal of the Notice.[2]

{¶ 27} Nevertheless, upon de novo review, we find no merit to appellant's argument that the Notice was procedurally defective. "The essence of procedural due process is the right to receive reasonable notice and a reasonable opportunity to be heard." *Huntington Natl. Bank v. 5777 Grant, L.L.C.*, 8th Dist. Cuyahoga No. 101412, 2014-Ohio-5154, ¶ 16, citing *Sprouse v. Miller*, 4th Dist. Lawrence No. 07CA32, 2008-Ohio-4384, ¶ 13. "Due process of law implies, in its most comprehensive sense, the right of the person affected to be heard, by testimony or otherwise, and to have the right of controverting, by proof, every material fact which bears on the question of right in the matter involved." *Williams v. Dollison*, 62 Ohio St.2d 297, 299, 405 N.E.2d 714 (1980). What constitutes due process depends on the facts of each case. *Huntington Natl. Bank* at *id.*, citing *Ohio Assn. of Pub. School*

---

[2] Ordinances may be constitutionally challenged on their face or as applied. Parties advancing an as-applied challenge must do so at their first available opportunity and failure to do so results in waiver. *Wymsylo v. Bartec, Inc.*, 132 Ohio St.3d 167, 2012-Ohio-2187, 970 N.E.2d 898, ¶ 20. Because appellant raised a procedural due process issue and not an as-applied challenge to the constitutionality of an ordinance, it was not required to first raise the issue with the city's Department of Building and Housing.

*Emp., AFSCME, AFL-CIO v. Lakewood City School Dist. Bd. of Edn.*, 68 Ohio St.3d 175, 177, 624 N.E.2d 1043 (1994).

{¶ 28} Initially, we find that despite appellant's assertion otherwise, the notice and hearing provisions set forth in R.C. Chapter 119 do not apply to this case. "R.C. Chapter 119 applies only to *state* agencies." (Emphasis sic.) *Crawford-Cole v. Lucas Cty. Dept. of Job & Family Servs.*, 121 Ohio St.3d 560, 2009-Ohio-1355, 906 N.E.2d 409, ¶ 38. *See also Karrick v. Findlay School Dist. Bd. of Edn.*, 174 Ohio St. 467, 469, 190 N.E.2d 256 (1963) ("only agencies at the state level of government are covered by R.C. Chapter 119."). Accordingly, appellant's reliance on the requirements of R.C. Chapter 119 as support for its argument that the city's Notice violated its due process rights is misplaced.

{¶ 29} Instead, R.C. Chapter 715 and C.C.O. 1303.09 are applicable to appellant's due process argument. R.C. Chapter 715 grants general powers to municipal corporations. R.C. 715.26 through 715.30 grants powers related to buildings and construction. Under R.C. 715.26, any municipal corporation may:

A. Regulate the erection of buildings or other structures and the sanitary condition thereof, the repair of, alteration in, and addition to buildings or other structures;

B. Provide for the inspection of buildings or other structures and for the removal and repair of insecure, unsafe, or structurally defective buildings or other structures under this section or section 715.261 of the Revised Code.

{¶ 30} R.C. 715.261 allows municipal corporations to collect the costs of abatement activities, including "[r]emoving, repairing, or securing insecure, unsafe structurally defective, abandoned, deserted, or open and vacant buildings or other

structures" and the "abatement of any nuisance."  R.C. 715.261(B) codifies the due process and notice requirements needed for "the removal and repair of insecure, unsafe, or structurally defective buildings or other structures" as follows:

> At least thirty days prior to the removal or repair of any insecure, unsafe, or structurally defective building, the municipal corporation, or its agent * * * shall give notice by certified mail of its intention with respect to such removal or repair to the holders of legal or equitable liens of record upon the real property on which such building is located and to owners or record of such property.

{¶ 31} Pursuant to its authority to provide for the inspection and removal of unsafe buildings, the city enacted building code ordinances, including C.C.O. 3103.09, which govern the city's identification and abatement of nuisance real properties.  Under C.C.O. 3103.09(b), "all unsafe structures or conditions are declared to be a public nuisance" that "shall be abated by correction of the violations to the minimum standards" of the city's ordinances, rules and regulations.  Under C.C.O. 3103.09(e), when the city finds a building or structure to be a public nuisance, it "shall forward by certified mail to the owner * * * a written notice of violation stating the defects in the building."  "The notice of violation shall require the owner within a stated time to abate the nuisance condition of the building * * *."  In addition, "the notice shall state that if the nuisance is not abated within the required time that the [city] may take appropriate action to repair, remove, or otherwise abate the public nuisance and that the owner, agent or person in control shall be responsible for the costs."  C.C.O. 3103.09(g) provides for a right to appeal from the notice of violation and that "any notice * * * shall automatically become a final order

if a written notice of appeal before the Board is not filed in the office of the Board within the time set forth in the notice from the [city.]" Under C.C.O. 3103.09(h), the city is authorized to "demolish remove, or abate" a public nuisance if the owner fails to comply with the notice of violation.

{¶ 32} The Notice sent by certified mail to appellant clearly stated that under C.C.O. 3103.09, 367.04, 369.19, and 369.21, the city had declared the Property to be a public nuisance and that pursuant to those ordinances, the city "will summarily abate said public nuisance * * * by demolition of the structure" if the listed violations were not "entirely corrected" by September 21, 2012. The Notice also advised appellant that "[y]ou have the right to appeal this notice. If you wish to appeal, you must file a written appeal within 30 days of the issuance date on this notice." The Notice then listed the address at which appellant should file its appeal. Finally, the Notice advised appellant that "[f]ailure to comply with this notice shall result in the demolition of the building(s). Any and all costs incurred by the city for the demolition of the building(s) shall be paid by the owner(s) of record."

{¶ 33} It is apparent that the Notice complied with the requirements of R.C. 715.261(B) and C.C.O. 3103.09. There is no question that the Notice advised appellant of "all the rules involved in the violation and penalties" and that it had the right to request a hearing within 30 days of the Notice.

{¶ 34} The Notice also adequately advised appellant that it would be liable for the costs of demolition. Appellant's argument that the Notice was affirmatively misleading and thus a denial of its procedural due process rights because the Notice

led it to believe that only owners of the Property at the time of demolition would be liable for demolition costs is wholly without merit. Significantly, appellant offered no evidence whatsoever to support this assertion. More importantly, the Notice was clear: costs for the demolition would be paid by "the owner(s) of record" if the code violations were not timely abated and demolition became necessary. Appellant was "the owner of record" when it received the Notice. Thus, the only reasonable interpretation of the Notice is that appellant was to pay the city's demolition costs if it did not abate the code violations cited in the Notice. Although the Notice did not specify a date for demolition, it clearly informed appellant that the city would seek to recover its demolition costs from appellant, as the "owner of record" when the Notice was issued, when the demolition occurred. The fact that the city is entitled under C.C.O. 3103.09(k) to collect demolition costs from all owners who appear in the chain of title from the notice of violation until the time of demolition does not affect the meaning of the Notice with respect to appellant; as the "owner of record" when the Notice was issued, appellant would be liable for the city's demolition costs when demolition occurred. Accordingly, the Notice did not violate appellant's procedural due process rights.

{¶ 35} In its motion for summary judgment, the city met its initial burden of pointing to evidence in the record establishing that it was entitled to summary judgment against appellant, i.e., the Notice was issued in compliance with the due process requirements of R.C. 715.261 and C.C.O. 1303.09, appellant received the

Notice, appellant was the owner of record when the Notice was issued, the code violations were never abated, and the city demolished the Property at its own costs.

{¶ 36} Appellant failed to produce any evidence regarding either the adequacy of the Notice or the city's entitlement to judgment against appellant. Accordingly, it did not meet its burden of "pointing to specific facts in the record demonstrating a genuine issue of material fact for trial," *Dresher*, 75 Ohio St.3d at 293, 662 N.E.2d 264, and therefore, the trial court properly granted summary judgment to the city against appellant with regard to appellant's liability. The first assignment of error is overruled.

**B. Joint and Several Liability**

{¶ 37} After finding appellant liable, the trial court entered judgment against appellant for $32,079.66, the entire amount of the city's costs related to the demolition of the Property. In its second assignment of error, appellant contends that even if it is liable, the trial court erred in entering judgment against it for the entire amount of the city's demolition costs because under Ohio's joint and several liability law set forth in R.C. 2307.22, it can be liable for at most only 20% of the costs.

{¶ 38} C.C.O. 3103.09(k)(2) permits any and all owners of a building or structure "who appear in the chain of title from the time of receipt of a notice of condemnation until demolition of the building or structure" to be held "jointly and severally responsible for all costs and expenses" incurred by the city relating to the demolition and the prosecution of collection of said costs and expenses.

{¶ 39} Appellant contends that because the term "jointly and severally responsible" is not defined in C.C.O. 3103.09, this court must apply R.C. 2307.22(A)(2) regarding joint and several liability, which provides that in a tort action, where the trier of fact determines that one of several joint defendants is less than 50 percent responsible for the plaintiff's injury, that defendant is liable to the plaintiff for only his or her proportionate share of the damages. Appellant argues that under the statute, it can be held liable for 100 percent of the city's damages only if it were more than 50 percent responsible for the damages. It contends that in its responses to appellant's requests for admissions, the city admitted that appellant was only 20 percent liable because it admitted appellant owned the Property for 20 percent of the time it was condemned and because the city admitted that the three entities who owned the Property after appellant likewise failed to abate the code violations.

{¶ 40} Appellant's argument fails for several reasons. First, this action is not a tort action. As set forth in bold typeface in paragraph 18 of the complaint, "**This lawsuit is an attempt to collect a debt. Any and all information obtained will be used for that purpose.**" Thus, R.C. 2307.22, which applies to tort actions, is not applicable to this case.

{¶ 41} Moreover, the city's responses to appellant's requests for admissions did not admit, as appellant contends, "that appellant has no more liability than any other defendant." Appellant's brief, p. 12. Likewise, the city did not admit that appellant's ownership of the Property for 20 percent of time it was condemned

equates to 20 percent liability. The city's responses merely acknowledged that appellant owned the Property for 20 percent of the time it was condemned and that three entities after appellant likewise failed to abate the nuisance.

{¶ 42} Furthermore, under C.C.O. 3103.09(k)(2), there is no relationship between the time owners own the Property during the period of condemnation and their liability for demolition costs. In construing the ordinance, this court has held that "a municipality 'may recoup its costs related to the abatement of the nuisance or the demolition of the condemned structure from any and all owners of the premises who appear in the chain of title.'" *Cleveland v. Whitmore*, 8th Dist. Cuyahoga No. 108893, 2020-Ohio-3670, ¶ 24, quoting *Cleveland v. CapitalSource Bank, ex rel. AEON Fin. L.L.C.*, 2019-Ohio-1990, 136 N.E.3d 884, ¶ 23 (8th Dist.). Thus, pursuant to *Whitmore* and *CapitalSource Bank*, liability for demolition costs in not limited by the amount of time an owner owns the property between condemnation and demolition; each owner may be held 100 percent liable.

{¶ 43} Appellant contends that *Whitmore* and *CapitalSource Bank* are not applicable to this case, however, because neither considered the argument raised here, which is that the formula for joint and several liability found in R.C. 2307.22 should be used when applying C.C.O. 3103.09(k)(2). But there would be no reason for this court to apply R.C. 2307.22 to the city's debt collection actions for demolition costs because R.C. 2307.22 applies only to tort actions. Furthermore, both *Whitmore* and *CapitalSource Bank* implicitly rejected any application of R.C. 2307.22 by holding that under C.C.O. 3103.09(k), the city may recover *all of its costs*

related to the demolition from *any owner* in the chain of title. Thus, they held that "jointly and severally responsible" under C.C.O. 3103.09(k)(2) means that each owner can be found to be 100 percent liable for the demolition costs.

{¶ 44} Such an interpretation of joint and several liability for purposes of C.C.O. 3103.09(k)(2) only makes sense. Because the city should not be forced to bear the costs of demolishing privately-owned abandoned and dilapidated buildings that leave neighborhoods blighted and their residents unsafe, this court has appropriately interpreted C.C.O. 3103.09(k) to mean that the city may collect 100 percent of its demolition costs from any owner that appears in the chain of title between the notice of violation and the time of demolition.

{¶ 45} The trial court correctly determined that appellant could be held 100 percent liable under C.C.O. 3103.09(k)(2) for all of the city's costs associated with demolition of the Property. Accordingly, the second assignment of error is overruled.

{¶ 46} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cleveland Municipal Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KATHLEEN ANN KEOUGH, JUDGE

FRANK DANIEL CELEBREZZE, III, P.J., and
CORNELIUS J. O'SULLIVAN, JR., J., CONCUR